IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 19, 2005

## PRENTISS PHILLIPS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. P-26816     W. Otis Higgs, Jr., Judge**

_____

**No. W2004-01626-CCA-R3-PC  - Filed May 12, 2005**

_____

The petitioner, Prentiss Phillips, appeals the denial of his petition for post-conviction relief.  The single issue presented for review is whether the petitioner was denied the effective assistance of counsel at trial.  The judgment is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which JOSEPH M. TIPTON and ALAN E. GLENN, JJ., joined.

Juni S. Ganguli, Memphis, Tennessee, for the appellant, Prentiss Phillips.

Paul G. Summers, Attorney General & Reporter; Seth P. Kestner, Assistant Attorney General; and David Zak, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The petitioner was convicted of first degree murder and especially aggravated kidnapping as the result of a confrontation between rival gangs in the Hurt Village Apartments in Memphis.  The jury sentenced the petitioner to life without the possibility of parole for the first degree murder conviction.  The trial court imposed a consecutive sentence of twenty-five years for the especially aggravated kidnapping offense.  The convictions and sentences were affirmed on direct appeal. State v. Phillips, 76 S.W.3d 1 (Tenn. Crim. App. 2001).  An application for permission to appeal to our supreme court was denied.

At trial, it was established that the initial dispute was between two toddlers at the apartment complex, a dispute which evolved into a fight between the two mothers and, eventually, the two fathers, each of whom had gang affiliations.  One of the fathers, Jarvis Shipp, held the rank of chief of security for the Gangster Disciples, while the other father, identified as "Snoop," was a member of the Vice Lords.  The evidence established that the petitioner, who was the leader of the Gangster Disciples at Hurt Village, later became involved in the dispute.  A meeting was called on the evening

of April 30, 1997, which meeting included the petitioner, Shipp, the North Memphis governor of the Gangster Disciples, and a board member from Chicago. During the course of the meeting, the petitioner mentioned that the victim, Vernon Green, was standing outside the apartment where the meeting was being held. Because the implication was that the victim was spying for the Vice Lords, he was brought inside the apartment and beaten by Gregory Robinson,[1] the first cousin of Jarvis Shipp. Testimony established that the victim begged the petitioner to direct "his folks" to leave him alone, explaining that he was simply waiting for a friend outside the apartment. According to the testimony, the petitioner declined to provide any relief.

Chris James, who testified for the state at the petitioner's trial, was the subject of the meeting. James, who had fled rather than assist fellow Gangster Disciples in the earlier Hurt Village altercation, was ordered at the conclusion of the meeting to receive a "Punkin Head" as punishment. According to this court's opinion on direct appeal, this punishment involved being beaten for a specific amount of time by other gang members. James testified at trial that the victim was beaten and then held for an hour before the petitioner and Robinson directed certain of the members to drive him to a park to be killed.

Natalie Black, who was the resident of the apartment where the meeting was held, knew that the victim was not a member of any gang and, although she and her two sisters had been forced to stay in upstairs bedrooms during the meeting, she saw the victim being carried by two armed gang members and later overheard the petitioner say that they were "going to have to kill [the victim] because he would talk if they let him live."

At 5:00 a.m. on May 1, 1997, the victim's body was found in a park. He had sustained five gunshot wounds, three to the head, one to the left buttock, and one across the back. Two of the head wounds were from a pistol or a rifle. The other three wounds were from a shotgun.

On direct appeal, this court determined that the evidence was sufficient to support both the first degree murder conviction and the conviction for especially aggravated kidnapping under theories of criminal responsibility. "A person is criminally responsible for an offense committed by the conduct of another if . . . [a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense[.]" Tenn. Code Ann. § 39-11-402(2). First degree murder is "[a] premeditated and intentional killing of another." Tenn. Code Ann. § 39-13-202(a)(1). An especially aggravated kidnapping occurs when (1) the defendant "knowingly removes or confines another unlawfully so as to interfere substantially with his liberty" and (2) the defendant accomplishes the false imprisonment "with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon," or "the victim suffers serious bodily injury." See Tenn. Code Ann. §§ 39-13-302, -305(a)(i)(4). Among other things,

---

[1]In State v. Robinson, 146 S.W.3d 469 (Tenn. 2004), our supreme court upheld Robinson's conviction of premeditated first degree murder of Vernon Green and approved the death penalty. Robinson was also convicted of especially aggravated kidnapping.

"serious bodily injury" means bodily injury that involves a substantial risk of death, protracted unconsciousness, or extreme physical pain. See id. § 39-11-106(a)(34)(A-C).

On October 4, 2002, the petitioner filed a petition for post-conviction relief alleging that he was denied the effective assistance of counsel and that he was denied his constitutional rights when the state failed to disclose evidence favorable to the defense in advance of the trial. He specifically contended that his attorneys, William Johnson and Dianne Thackery, were unprepared for trial in that they failed to interview available witnesses, failed to conduct adequate discovery procedures, and inappropriately advised him not to testify in his own behalf.

On April 17, 2003, a memorandum in support of the petition was filed by counsel wherein the following specific allegations were made:

1.      Trial counsel failed to adequately prepare for trial by conducting a pre-trial investigation of the scene and by requiring the appearance of key witnesses;
2.      trial counsel was ineffective by failing to properly advise the petitioner of the results of the investigation so that the petitioner could have provided alibi witnesses who could have corroborated his lack of authority to order the activity, e.g., Robert Moore and Kevin Foley;
3.      trial counsel was deficient by having failed to file timely pre-trial motions regarding the testimony of prosecution witnesses and by having failed to properly prepare for cross-examination of state witnesses;
4.      trial counsel was ineffective for advising petitioner not to testify on his own behalf, particularly because his only defenses were dual theories of alibi and lack of responsibility for the murder and kidnapping; and
5.      Trial counsel was ineffective for having failed to secure possible plea offers from the state.

At the evidentiary hearing, the petitioner complained that he asked his trial counsel for discovery materials in advance of his trial but did not receive them. He testified that he was disappointed that he had allowed his trial counsel to persuade him not to testify at trial. While acknowledging that the state sought the death penalty and that he had prior convictions, including a prior conviction for rape, he expressed the belief that it was in his best interest to testify. The petitioner also testified that his trial counsel should have utilized Robert Moore, Miles Pringle, and possibly others to testify as witnesses on his behalf. The petitioner complained that his trial attorneys did not adequately prepare for one of the state's important witnesses, Chris James:

> [S]omewhere during the trial they questioned . . . Chris James about the hierarchy of the Gan[gster] Disciples. And . . . he never did, you know, . . . he would name things I ain't never heard of. So, you know, it was pretty much something somebody had told him. . . . [I]t was practically hearsay. They [were] going by his and the three . . . sisters that were there. Going by their testimony only.

On cross-examination, the petitioner acknowledged that he did not testify because his family convinced him not to do so. Apparently, three other individuals charged in the crime were prepared to testify against the petitioner in rebuttal, something he chose to avoid:

> The judge cleared out the courtroom. He cleared out the entire courtroom except for my family sitting them in the front row behind there. And let them sit on there and tell them your lawyer says there [are] three guys out there fixing to testify against you if you get on the stand.

While the petitioner admitted that he was a gang member, he denied that he was involved in the killing and denied that he was an officer in the Gangster Disciples.

According to Attorney Johnson, the defense was that the petitioner was not the individual in charge and there were several other people who ranked higher than him in the Gangster Disciple hierarchy. It was the defense theory that James, a critical witness for the state, was chief of security and had more authority than the petitioner. Attorney Johnson pointed out that James was not the only witness who testified that the petitioner was in charge. The Black sisters and the petitioner's co-defendants had confirmed that the petitioner was "the head honcho" of the gang. Attorney Johnson testified that he had transcripts of the co-defendants' trials available to him as a source of preparation and also had an investigator. He acknowledged that he had not provided those trial transcripts to the petitioner, pointing out that the petitioner had not asked for them. He claimed that he had visited with the petitioner several times prior to trial but had no recollection of whether he had attempted to prepare the petitioner to testify on his own behalf.

Attorney Johnson, who had previously served on the Shelby County Public Defender's capital defense team for some four years, had been involved in twelve or thirteen prior capital cases. It was his opinion that he was prepared for trial, that his cross-examination was vigorous, and that his defense was successful in that the petitioner was able to avoid the death penalty. It was his testimony that the state made no offer to resolve the case by agreement.

Attorney Thackery, a member of the capital defense team with the Shelby County Public Defender's Office since 1998, testified that the petitioner's trial was her second capital case. She described her role as one of note-taking, consultation, and involvement in discussions with the petitioner's family. Attorney Thackery testified that she had been provided full discovery in the petitioner's case, that she had conducted an investigation, and that she was particularly familiar with the testimony of Natalie and Nikki Black. She acknowledged, however, that she saw the petitioner no more than once or twice at the jail prior to the trial.

At the conclusion of the evidentiary hearing, the trial court made specific findings of fact in the order denying relief which, in summary, provided as follows:

-4-

1.      That any failure on the part of trial counsel to call witnesses such as Robert Moore or Kevin Foley was a tactical decision based upon sound strategy and, therefore, there was no deficiency in performance;
2.      that trial counsel was not deficient in performance by advising the petitioner not to testify at trial because of the petitioner's prior criminal record; and
3.      that trial counsel was not deficient in performance for any lack of preparation at trial, particularly for any failure to make use of a jury selection expert or for any failure to make use of a jury questionnaire.

Under our statutory law, the petitioner bears the burden of proving the allegations in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). Evidence is clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from the evidence. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, the findings of fact made by the post-conviction court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988). The burden is on the petitioner to show that the evidence preponderated against those findings. Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978). The credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the post-conviction court. Bates v. State, 973 S.W.2d 615 (Tenn. Crim. App. 1997).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693 (1984). The error must be so serious as to render an unreliable result. Id. at 687. It is not necessary, however, that absent the deficiency, the trial would have resulted in an acquittal. Id. at 695. Should the petitioner fail to establish either factor, he is not entitled to relief. Our supreme court described the standard of review as follows:

Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component.

Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel,

however, applies only if the choices are made after adequate preparation for the case. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. Fields v. State, 40 S.W.3d 450, 457-58 (Tenn. 2001); see also State v. England, 19 S.W.3d 762, 766 (Tenn. 2000).

In this appeal, the petitioner, whose single claim on appeal is ineffective assistance of counsel, makes the classic mistake of arguing several areas of potential deficiency in attorney performance without having provided any proof during the evidentiary hearing of prejudice in result. As examples of deficiency in performance, he argues that his attorneys failed to communicate for several months prior to the trial date and failed to prepare him for the possibility of testifying even though the defense theory was one that likely required his testimony. The petitioner alleges that his counsel did not develop a jury questionnaire and did not adequately prepare for the trial by seeking expert assistance in jury selection, accurately pointing out that trial counsel, who merely explained that he did not "particularly care for them," was unable to articulate his rationale for not doing so. Finally, the petitioner asserts that his counsel was ineffective for having failed to subpoena witnesses that would have been helpful and that all of these accumulated deficiencies warrant post-conviction relief.

The petitioner has not, however, demonstrated any prejudice from the alleged deficiencies. He did not provide any suggestion as to how further communication with his trial counsel would have been helpful in advance of trial. Further, while it would have been prudent for trial counsel to have prepared the petitioner to testify had he elected to do so, it is apparent from an examination of the trial record that the petitioner made an informed choice to remain silent, partly because of his prior criminal record and partly because of the possibility that other witnesses were on hand to refute what he would likely say. While his attorneys suggested that he not testify, his own family members did as well. Because his life was at stake, a life that was ultimately spared by the verdict in the penalty phase of the trial, it is difficult at this stage to second-guess the advice provided by trial counsel. It is not as clear as his post-conviction counsel suggests that the defense theory at trial required the petitioner to testify. The petitioner was not at the scene of the murder and the real issue was whether he directed the others to kill the victim and whether he had the authority to do so. A tactical decision had to be made and, even with the benefit of hind-sight, this court cannot say that trial counsel erred in their advice.

It is incumbent upon the petitioner and his post-conviction counsel to demonstrate how a jury questionnaire or an expert in the field of jury selection might have made a difference. A jury expert was not called as a witness at the evidentiary hearing. This court is unable to determine whether one or more of the jurors would have or should have been excluded had an expert been employed. Absent that testimony, this court cannot find prejudice. Similarly, the petitioner must not only

identify those witnesses who should have testified at the trial but should produce them at the evidentiary hearing. If their testimony would have been critical at trial, it is the responsibility of the petitioner to demonstrate that at the evidentiary hearing. Had trial counsel been deficient by failing to adequately interview those witnesses, it would have been apparent by the nature of their testimony. To reiterate, the burden is on the petitioner to not only establish deficiency in performance but to also show prejudice in result. That prejudice might have been established if the witnesses had been made available to testify at the evidentiary hearing.

In Black v. State, 794 S.W.2d 752 (Tenn. Crim. App. 1990), this court enumerated the standard for establishing prejudice by counsel's failure to subpoena witnesses. To establish prejudice, the petitioner must "(1) produce the witness at his post-conviction hearing; (2) show that through reasonable investigation, trial counsel would have located the witness; and (3) elicit both favorable and material testimony from the witness." Denton v. State, 954 S.W.2d 793, 802-03 (Tenn. Crim. App. 1996) (citing Black, 794 S.W.2d at 757). This standard requires petitioner to produce the uncalled witnesses at the post-conviction proceeding so that the court need not speculate as to the materiality of the testimony or credibility of the missing witnesses. Black, 794 S.W.2d at 758.

The judgment of the post-conviction court is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE